**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

Case No. 10-21282-Civ-TORRES

CONSENT CASE

MARIA TERESA DAVILA,

    Plaintiff,

v.

MARIA CLAUDIA MENENDEZ,
RUDOLFO MENENDEZ,

    Defendants.

_____/

**ORDER ON PENDING MOTIONS**

This matter is before the Court on three pending motions filed by Plaintiff Maria Teresa Davila ("Davila") following the entry of the Jury's verdict at the trial on remand from the Court's earlier Final Judgment. The Court has considered the parties' arguments and reviewed extensively the record in the case, from which the following Rulings are entered.

**I.   BACKGROUND**

    A.    *<u>First Trial Proceedings</u>*

In April 2010, Davila filed this action against Defendants ("the Menendezes") to recover for unpaid minimum wages under the Fair Labor Standards Act ("FLSA"). Davila alleged that she had "worked an average of 100 hours a week between . . . July 28, 2004 through . . . February 14, 2008," and been "paid $3.50 per hour for all hours

of work." Davila also alleged that she had "worked an average of 75 hours a week between . . . October 10, 2008 through . . . March 26, 2010," and been "paid $4.00 per hour for all hours of work." Davila alleged that the Menendezes had "willfully and intentionally refused to pay . . . or post[] any notice . . . of her rights to minimum wages."

The case proceeded to trial upon the denial of the Menendezes' motion for summary judgment. The primary factual issues in dispute centered on the number of hours that Davila had worked and her duties in the Menendez home. The Menendezes testified that Davila had been paid according to the minimum wage laws, and that Davila had never complained about her compensation. The Menendezes further testified that they had hired Davila at the rate of $350 a week, paid her when the child had been on vacation with Claudia, gave Davila money for living expenses and to pay taxes, paid medical expenses incurred by Davila's relative in Colombia, paid Davila's credit card bills while she was in Canada, and paid for her airplane ticket to return to the United States. Rudolfo Menendez testified that he "[had] an idea of what minimum wage was," that the rate "might have been about $6 an hour," and that he "always thought that [the family had] pa[id] [Davila] way above minimum wage." Mr. Menendez testified that he had required Davila to file tax returns, but he had not "inquire[d] whether [his] payments to Ms. Davila were in sync with the minimum wage laws," and "didn't know [that he was] supposed" to file W-2 forms for Davila. He also testified that he had recommended his certified public accountant to Davila and that the accountant "would [not] risk his license to do anything unethical."

Davila testified, however, that the Menendezes did not act in good faith. Davila claimed that, during her first meeting with the Menendezes, Mr. Menendez questioned why an "illegal" would charge $350 a week, mentioned several times that he was "with the government," and told Davila that she "should not be charging that much." Davila also testified that she "never received again $400 [a week]" after she returned from Canada. Davila stated that the Menendezes cheated on their taxes and used their accountant to report falsely Davila's income. Davila also testified that, during a trip Davila took to a hospital for a job-related accident, Claudia told Davila not to mention that she was an employee of the Menendezes because they had not provided health insurance for her.

At the close of all the evidence during this first trial, the Menendezes "move[d] for a directed verdict on the issue of intentional reckless or willful behavior on the part of the defendants," and the then-presiding trial judge granted the motion. [D.E. 101]. The court ruled that the "testimony . . . that [the Menendezes] were aware of the requirements of paying a minimum wage, . . . in and of itself, under the circumstances in this case, . . . [does not] give rise to a jury question . . . of whether they intentionally violated the minimum wage requirement or showed reckless disregard." The court concluded that the Menendezes' "failure to go and investigate further is [not] a requirement [nor does it] give[] rise, in and of itself, to creating a jury question here" about willfulness. [D.E. 133].

As a consequence of this Rule 50 determination, the first trial jury was never asked to render a willfulness determination to extend the limitations period for an additional fifth year of damages. The jury did find, however, in favor of Davila on her

minimum wage claims and found that the Menendezes owed Davila $33,025 in unpaid wages, which represented damages for the four years prior to the filing of the complaint.

After the trial, Davila moved for liquidated damages, but the district court denied Davila's motion. The district court ruled that the Menendezes "acted in good faith in compensating [Davila] for all hours worked in their employment," and the district court "exercise[d] its discretion in declining to award punitive damages in this case." [D.E. 101]. As a result, the Court ultimately entered judgment in Davila's favor limited to the precise amount of the jury's verdict. [D.E. 106].

### B.   *Reversal on Appeal*

Upon entry of the final judgment, Davila appealed. [D.E. 110]. She claimed that the trial judge erred in finding, as a matter of law, that the Menendezes did not willfully violate the federal and state minimum wage laws. She also appealed the trial judge's denial of her motion for liquidated damages.

The Court of Appeals issued a published decision that sustained Davila's appeal of the court's Rule 50 findings. [D.E. 133]; 717 F.3d 1179 (11th Cir. 2013). The panel's opinion first found that the trial judge erred in ruling as a matter of law in the Mendendez's favor on the willfulness question. Specifically, the Court found that:

> The district court erred when it entered a judgment as a matter of law that the Menendezes did not willfully violate the minimum wage laws. Davila introduced evidence from which a reasonable jury could have found that the Menendezes willfully violated the minimum wage laws. . . . Davila elicited from the Menendezes that they knew of the hourly wage laws, but failed to investigate whether they had complied with those laws. Davila testified that the Menendezes did not sign a contract with Davila, did not record her working hours, and paid her in cash. And

> Davila further testified that Rudolfo made threatening comments about her alien status and his work for the government. Despite the Menendezes' assertions that they were ignorant of their obligations under the minimum wage laws, a reasonable jury could have drawn a contrary inference from the evidence, and the district court erred when it refused to submit the issue of willfulness to the jury. Davila is entitled to a new trial before a jury to determine whether the Menendezes willfully violated the minimum wage laws.

[D.E. 133 at 11-12].

Second, the Court held that this determination then tainted the trial judge's decision on the demand for liquidated damages after the jury had found in Davila's favor on liability for four years of minimum wages. The trial judge's error in taking the willfulness issue away from the jury had to be "reconsidered" because:

> the district court was required to await the finding of the jury about willfulness. "The willfulness or good faith question [must be] answered first by the jury to determine the period of limitations and then, if there is a verdict for the employee, again by the [district court] to determine whether to award liquidated damages." [ ] If the jury finds that the Menendezes acted willfully, then their good-faith defense would necessarily fail, and Davila would be entitled to liquidated damages. [ ] But if the jury finds that the Menendezes did not willfully violate federal and state minimum wage laws, that determination would not necessarily mean that they acted in good faith. "Because the burden of proof is placed differently [for issues of willfulness and good faith], a finding that willfulness was not present may co-exist peacefully with a finding that good faith was not present." [*Rodriguez v. Farm Stores Grocery, Inc.,* 518 F.3d 1259, 1274 (11th Cir. 2008)]. The Menendezes admittedly did not inquire about their obligations under the hourly wage laws, and the district court could infer that the Menendezes lacked "reasonable grounds for believing that [their] conduct comported with the Act." [ ].

[D.E. 133 at 13-14 (certain citations omitted)].

As a result, the final judgment was reversed and vacated with respect to these two issues and the case remanded. The Court made clear, in response to a motion for clarification, that the original liability finding in the amount of $33,025.00 "shall

remain intact and shall be part of the Final Judgment." [D.E. 132].  The Court also remanded the question of appellate fees for the prevailing party on appeal.

### C.     *Second Trial on Remand*

In accordance with the Court of Appeals' mandate, and after the transfer of the case to a new presiding judge following Magistrate Judge Bandstra's retirement, the Court presided over a second trial.  This trial focused on Davila's claim for damages on the fifth year that the jury in the first trial was never asked to consider.  Evidence was presented on that specific issue as well as the willfulness determination that the Court of Appeals directed be submitted to the jury.  The jury was instructed, without objection, to first consider whether any minimum wages were owed at all, and if so whether the Menendez's violated the law willfully.

After a complete presentation of the evidence on these issues, the jury found that Davila was not entitled to any minimum wages at all. [D.E. 158].  The natural consequence of that determination, of course, is that the Mendendezes could not have engaged in willful violations of the law.  The verdict form indeed evidences the jury's refusal to find that the Menendezes engaged in any willful violations of the minimum wage laws at issue in this case. [D.E. 158].

### D.     *Motion for Imposition of Liquidated Damages [D.E. 159]*

No amended final judgment has yet been entered.  Following the jury's verdict, Davila filed the pending motion for imposition of liquidated damages that seeks a new judgment that reflects the original liability finding in Plaintiff's favor, plus a liquidated damages award under 29 U.S.C. § 216(b). [D.E. 159].  Davila maintains that the Court

of Appeals' mandate requires that the Court fully reconsider the liquidated damages request in light of the first jury's award of damages and the absence of any evidence of both subjective and objective good faith in the record. Davila maintains that her original jury award mandates the entry of liquidated damages, which the earlier presiding judge refused to award under the erroneous Rule 50 finding reversed on appeal.

The Menendezes argue, however, that no liquidated damages award is necessary because the Court "should simply accept as the law of the case the factual finding made by Judge Bandstra and deny the Motion to address what happened at the prior trial." [D.E. 163 at 3]. In other words, they maintain that where neither the first jury, the second jury, nor the first trial judge found that the Menendezes engaged in willful violations of the law, it would be "illogical" for this Court to reach a different conclusion.

## II.   ANALYSIS

### A.   *Liquidated Damages*

An employer who seeks to avoid liquidated damages bears the burden of proving that its violation was "both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict." *Joiner v. City of Macon,* 814 F.2d 1537, 1539 (11th Cir. 1987) (quoting *Reeves v. International Tel. & Tel. Corp.,* 616 F.2d 1342, 1352-53 (5th Cir. 1980)); *Miller v. Paradise of Port Richey, Inc.,* 75 F. Supp. 2d 1342, 1344 (M.D. Fla.1999) (the law is well settled in the Eleventh Circuit that a prevailing plaintiff is entitled to a mandatory award of

liquidated damages unless the district court explicitly finds that the defendant acted in good faith in violating the Fair Labor Standards Act). An employer who knew or had reason to know that the FLSA applied cannot establish good faith as a defense. *Joiner,* 814 F.2d at 1539 (citing *Reeves,* 616 F.2d at 1352-53). Liquidated damages are hence "mandatory" absent a persuasive showing of good faith. *Joiner,* 814 F.2d at 1539 (citing *EEOC v. First Citizens Bank of Billings,* 758 F.2d 397, 403 (9th Cir.1985)).

Our review of this standard of review required by section 216(b) and the record in this case reveals that we cannot dispose of the case in the manner that the Menendezes suggest. The first reason why is that Judge Bandstra's Order is undeniably tainted by his erroneous determination during the trial that Plaintiffs had failed to established a prima facie basis of willfulness. The same considerations, which were found to be erroneous on appeal, that he relied upon in his Rule 50 ruling are found in the curt order denying liquidated damages (which he erroneously designated as "punitive" damages). [D.E. 101].

Second, the Order impliedly suggests that the burden of persuasion on the motion fell upon Davila, even though under the law that burden falls squarely on the shoulders of the employer. Section 216(b) of the FLSA provides that "[a]ny employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Liquidated damages under the FLSA "are compensation, not a penalty or punishment." *Overnight Motor Co. v. Missel,*

8

316 U.S. 572, 583 (1942); *see also Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697, 707 (1945) ("It constitutes a Congressional recognition that failure to pay the statutory minimum on time may be so detrimental to maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers and to the free flow of commerce, that double payment must be made in the event of delay in order to insure restoration of the worker to that minimum standard of well-being." (internal quotations omitted)).

The mandatory nature of this form of compensation to an aggrieved employee was modified by the Portal to Portal Act, which created a discretionary exception if "the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938." 29 U.S.C. § 260. In applying section 260, a court must always place the burden on the employer to prove the presence of subjective and objective good faith. As the Eleventh Circuit has found, "the district court's decision whether to award liquidated damages does not become discretionary until the employer carries its burden of proving good faith. In other words, liquidated damages are mandatory absent a showing of good faith." *Joiner,* 814 F.2d at 1539 (citing *EEOC v. First Citizens Bank of Billings,* 758 F.2d 397, 403 (9th Cir. 1985)).

The Eleventh Circuit is by no means alone in applying this interpretation of section 260. *See, e.g., Barcellona v. Tiffany English Pub, Inc.,* 597 F.2d 464, 468 (5th Cir. 1979) ("We understand the language of section 11 of the Portal-to-Portal Act to

9

impose upon the employer who would escape the payment of liquidated damages a *plain and substantial burden* of persuading the court by proof that his failure to obey the statute was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict.") (emphasis added); *McClanahan v. Matthews,* 440 F.2d 320, 322 (6th Cir. 1971) ("In the absence of such proof[, however,] a district court has no power or discretion to reduce an employer's liability for the equivalent of double unpaid wages."); *Uphoff v. Elegant Bath, Ltd.,* 176 F.3d 399, 405 (7th Cir.1999) ("Although in the final analysis, we review a district court's decision on liquidated damages for abuse of discretion, that discretion must be exercised consistently with the strong presumption under the statute in favor of doubling.").

Third, we are concerned that Judge Bandstra's finding runs afoul of controlling authority in this Circuit that expressly rejects "ignorance" as a defense to liability for liquidated damages. "We do not believe an employer may rely on ignorance alone as [r]easonable grounds for believing that its actions were not in violation of the Act." *Barcellona v. Tiffany English Pub, Inc.,* 597 F.2d at 468-69. When one reviews Judge Bandstra's Order, it certainly reads as if the court was doing just that.

In sum, when we juxtapose Judge Bandstra's Order denying liquidated damages in this case, against this extensive body of controlling authority, we are not comfortable relying upon that finding in light of the Court of Appeals' remand and the posture of the case. Moreover, contrary to what the Response argues, Judge Bandstra's Order is

not in fact "the law of the case" because the mandate undeniably reversed that Order for plenary reconsideration.

At this stage, our obligation is to revisit the issue anew. That requires a review of the record on the first trial, the second trial, and any additional evidence submitted on the motion. That conclusion then leads us to the next question. Do we have enough evidence in this record to reach a final conclusion on the liquidated damages question? Davila maintains that we do. The Menendezes' response, however, suggests that if we do not accept their law of the case theory it was always their intention to supplement the record on the equitable issues left for the Court after the jury trial.

Because this is a matter of equitable discretion, either approach is defensible. The preferred course of action at this point is to tentatively grant the motion because section 216(b) makes a liquidated damage award mandatory. We will not enter a final judgment yet until we fully address whether section 260 applies to grant any exception for subjective and objective good faith. For that purpose we will allow any party to supplement the record on the equitable issue before the Court. The parties shall file any supplemental evidence they would like to in connection with the good faith exception, which filings should also address whether a reduced liquidated damage award should be imposed in this case. Additionally, the Menendezes are requested to point the Court to facts in either trial record that evidence objective good faith on their part and any efforts to ascertain what the law required. If affidavits or declarations are submitted in response to this Order, the Court will then decide whether an

evidentiary hearing is required. For now, we simply will reopen the proceedings for this purpose as Ordered herein and allow the parties leave to supplement the record.

### B. *Discovery Motions*

Also pending before the Court are Davila's Motions for Post-Judgment discovery that she is entitled to in executing upon the original Final Judgment that has not been stayed. As no showing has been made that these motions should not be granted, the motions to compel will be Granted.

### III.  CONCLUSION

For the reasons explained above, it is **ORDERED AND ADJUDGED**:

1. Plaintiffs' Motion for Imposition of Liquidated Damages [D.E. 159] is tentatively **GRANTED**. Plaintiff's Motion to Amend Final Judgment is denied as premature. Any supplemental filings Ordered herein shall be filed within fourteen days.

2. Plaintiff's Motion to Compel Fact Information Sheet in Aid of Execution [D.E. 165] is **GRANTED**. To the extent the issues raised are not already moot, Defendants shall fully complete the requested information within fourteen days.

3. Plaintiff's Motion to Compel Discovery Requests [D.E. 167] is **GRANTED**. To the extent the issues raised are not already moot, Defendants shall fully respond to the requested discovery, and produce all responsive documents, within fourteen days.

**DONE AND ORDERED** in Chambers at Miami, Florida this 5th day of March, 2015.

/s/   *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge